UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:01-CV-1223 CAS |
| | ) | |
| GARY B. KEMPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's alternative motion for new trial and motion for attorney's fees. The Court previously ordered the new trial motion held in abeyance until it obtained additional information from defendants' counsel relating to one aspect of plaintiff's new trial motion. See Memorandum and Order of September 22, 2005 at 6-9. [Doc. 195] Specifically, defendants' counsel was ordered to file an affidavit addressing these issues: (1) when did former defendant Michael Blandford return to the United States from Iraq; (2) when did Blandford resume working for the Missouri Department of Corrections; and (3) on what date(s), in what manner, and from whom did defendants' counsel make inquiry into the foregoing during the course of this litigation from March 2004 through the time of trial. Defendants' counsel filed the required affidavit, plaintiff filed his response, and defendants filed a reply.

For the following reasons, plaintiff's motion for new trial and his motion for attorney's fees should be denied.

**Legal Standard**.

It is almost entirely within the discretion of the trial court whether to grant a new trial. See Federal Rule of Civil Procedure 59(a); Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). "A

new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). The key question is whether a new trial is required in order to avoid a miscarriage of justice. Belk, 228 F.3d at 878.

**Discussion**.

Plaintiff raises five points of error in support of his motion for new trial: (1) the Court erred in admitting evidence of plaintiff's prior positive drug tests; (2) evidence of plaintiff's drug tests after he left the Missouri Eastern Correctional Center was erroneously presented to the jury in violation of the Court's ruling on plaintiff's motion in limine; (3) the Court erred in refusing to submit plaintiff's proposed punitive damage instruction; (4) the jury's finding that plaintiff was not retaliated against is contrary to the weight of the evidence; and (5) the Court erred in allowing the trial to proceed without voluntarily dismissed defendant Michael Blandford.

The Court has carefully considered plaintiff's first three points concerning the admission of evidence and the refusal to give a punitive damage instruction. The Court concludes that none of these actions, even if error, resulted in a miscarriage of justice, and therefore do not warrant a new trial. In reviewing the fourth point, whether the verdict was against the weight of the evidence, the Court is mindful that a "new trial is appropriate if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice." Van Steenburg v. Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999). A miscarriage of justice occurs when there is insufficient evidence to support the verdict. Douglas County Bank & Trust Co. v. United Financial Inc., 207 F.3d 473, 478 (8th Cir. 2000). Based on a careful review of the record, the Court finds that the verdict in the instant case was not against the weight of the evidence.

The Court now turns to plaintiff's fifth point in support of his motion for new trial. Plaintiff asserts that it was error to allow the trial to proceed without defendant Michael Blandford, who was voluntarily dismissed by plaintiff prior to trial. The Court will reiterate the facts and procedural background relevant to this point, as previously set forth in the Memorandum and Order of September 22, 2005:

In March 2004, defendants' counsel represented to the Court that Mr. Blandford was unavailable to participate in discovery or trial because he was on active military duty in Iraq. By order dated May 20, 2004, the Court stated as follows:

> The parties previously appeared before the Court at its discovery motion docket on March 18, 2004, and the Court granted plaintiff Walker's motion to compel and his motion to modify the Case Management Order to extend the discovery deadline to May 31, 2004. At the discovery hearing, the parties informed the Court that a key defendant, Michael Blandford, is serving in the military in Iraq and it is unknown when he may return to this country. The parties expressed tentative agreement that the case may need to be stayed or otherwise held in abeyance until this defendant returns. The Court directed the parties to complete all other discovery and then report back on the status of the case. The parties recently contacted the Court informally and requested that the discovery deadline be extended, and stated there was no change in defendant Blandford's status.

Order of May 20, 2004 at 1. The Court vacated the June 2004 trial setting, extended the discovery deadline, and ordered plaintiff's counsel to notify the Court in writing on or before September 28, 2004 "whether defendant Blandford has returned to this county and whether plaintiff Walker is requesting that this matter be stayed or otherwise held in abeyance." Id. at 2.

On September 28, 2004, in response to the Order of May 20, 2004, plaintiff filed a motion to stay his claims against Blandford under Rules 20(b) and 42(b), Federal Rules of Civil Procedure. See [Doc. 100]. By Memorandum and Order dated November 3, 2004, the Court denied plaintiff's motion to stay the claims against Blandford, which it construed as a motion to sever, but stated it was

3

"inclined to order the case stayed pending defendant Blandford's return to this country" and granted the parties twenty days to file any written objections to the proposed stay order. Mem. and Order of Nov. 3, 2004 at 7-8 [Doc. 107]. On November 16, 2004, plaintiff moved to voluntarily dismiss his claims against Blandford with prejudice [Doc. 109], which the Court granted. Plaintiff subsequently filed a written opposition to the proposed stay, requested that the case not be stayed, and asked for a modification of the Case Management Order to permit certain additional, limited discovery. See Doc. 112. The Court modified the Case Management Order as requested by plaintiff and set the matter for trial in July 2005. See Doc.114.

Plaintiff asserts that he is entitled to a new trial because he learned on the first day of trial that Blandford may have returned from military service as long as a year before trial, but defendants' counsel had denied plaintiff's attorneys permission to speak with Blandford and refused to make any inquiries concerning him to the Missouri Department of Corrections ("DOC"). Plaintiff also states that he issued multiple interrogatories inquiring into Blandford's employment status with the DOC, and therefore defendants and their counsel had an ongoing duty under Rule 26(e), Fed. R. Civ. P., to supplement their discovery responses and provide Blandford's current employment information; specifically, when he returned to the United States and resumed his employment with the DOC.

Plaintiff asserts that he was significantly prejudiced by defense counsel's "factually incorrect statements" because many of his allegations were based upon harassment by Blandford, and he detrimentally relied on the representations of defendants' counsel concerning Blandford's tour of duty in dismissing his claims against Blandford. Moreover, plaintiff asserts, it is uncontroverted that Blandford was back and working for the DOC at the time of trial, which is significant because

4

Blandford was a key witness and had plaintiff known he was in the country, he could have deposed Blandford and at minimum presented his testimony at trial by deposition.

When discovery abuses are the grounds in support of a motion for new trial, the decision to grant or deny the motion is committed to the sound discretion of the trial court. See Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 148 (8th Cir. 1997); see also Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co., 709 F.2d 427, 434 (6th Cir. 1983) (in light of the discretion given to trial courts on discovery matters, a party "is required to show significant prejudice caused by the lack of supplementation" of discovery to warrant a new trial). The issue the Court must determine is whether a miscarriage of justice has occurred as a result of the foregoing circumstances surrounding the failure to disclose the return of defendant Blandford. See Buchholz, 120 F.3d at 148. Based upon its review of a rough draft of the trial transcript, its recollection of the evidence and its knowledge of the history of this case, the Court concludes that no miscarriage of justice occurred.

A review of defendants' counsel Ms. Yates' affidavit and the subsequent briefing relating thereto reveals no indication of bad faith on Ms. Yates' part in her failure to discover and disclose to plaintiff that Blandford had not only returned to this country but was working for the DOC. Nonetheless, Ms. Yates had a duty to supplement discovery information, and the Court believes that if Ms. Yates had been reasonably diligent, she would have learned of Blandford's return and would have been obligated to provide that information to plaintiff in response to his discovery requests.

Rule 26(e) of the Federal Rules of Civil Procedure places an affirmative duty on an attorney to fully disclose and then supplement disclosure to her adversary. See Rule 26(e), Fed. R. Civ. P. Ms. Yates certainly was aware that plaintiff was vitally interested in learning of defendant Blandford's whereabouts, as the issue was raised before the Court several times over a period of months

beginning in March 2004 and continuing into September 2004. The "federal discovery rules place a duty on a party to turn over not only proper material of which he is aware, but also those of which he reasonably *ought* to have been aware." Arthur v. Atkinson Freight Lines Corp., 164 F.R.D. 19, 20 (S.D.N.Y. 1995); see also Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 369 (M.D. Ala. 2001) (citing Arthur). "The fact that a party's attorney does not know about the updated information is irrelevant; the duty [to supplement] exists nevertheless." 6 James Wm. Moore et al., Moore's Federal Practice § 26.131[3] (3d ed. 2005).

The Court finds that through the exercise of some measure of diligence, Ms. Yates and her clients should have been aware of Blandford's return to the United States and resumption of work at the DOC sometime before the trial of this case, given that he had returned in January 2005. Ms. Yates' affidavit states that she contacted Blandford's wife at some unspecified time, and asked her when he was expected to return. Ms. Yates avers that Mrs. Blandford stated he was not expected to return until at least July 2005. Ms. Yates apparently took no further action to inquire concerning Blandford's status, as her affidavit is silent on that point. There is no indication she made any inquiry with the DOC concerning Blandford at any time. Moreover, the fact that plaintiff dismissed his claims against Blandford did not end the duty to supplement because Blandford was still a key witness.

The failure of defendants and their counsel to fulfill their discovery obligations resulted in interference with the full preparation of plaintiff's case, as plaintiff was not able to depose or present at trial the testimony of one of the individuals who he claimed violated his constitutional rights. Nonetheless, the Court finds that the defendants and Ms. Yates cannot be held responsible for plaintiff's decision to dismiss his claims against Blandford with prejudice in November 2004. As detailed above, the Court had indicated its intent to stay the entire case until Blandford returned, but

plaintiff objected to a stay of the case and chose not only to voluntarily dismiss his claims against Blandford, but to do so with prejudice. Thus, plaintiff's request for a new trial with Blandford <u>as a defendant</u>, rather than as a witness, should be denied.

Even if plaintiff had not voluntarily chosen to dismiss Blandford, the Court finds that no miscarriage of justice occurred as a result of proceeding to trial following the dismissal. While it is impossible to know with absolutely certainty the impact on the trial if Blandford had appeared as a witness, the Court is confident the end result would have been the same based on the evidence that was presented.

Plaintiff's claims included the allegation that defendant Stubblefield was on notice of and failed to correct wrongful action by Blandford. Plaintiff presented evidence concerning Blandford's alleged wrongdoing, including plaintiff's testimony of specific acts of harassment such as (1) requiring plaintiff to drop his pants down to his ankles while giving a urine specimen in view of other people, (2) denying plaintiff water prior to a urinalysis, (3) not allowing plaintiff to defecate on one occasion when plaintiff was being required to give a urine specimen; (4) insulting behavior including calling inmates degrading names, (5) attempts to confiscate plaintiff's legal papers, (6) targeting inmates for urinalysis testing based on "his own whim," and (7) retaliating against plaintiff based on his work as a prison law clerk by targeting plaintiff for urinalysis testing. Plaintiff testified that Blandford knew he was a prison law clerk and called him "Johnny Cockroach," a reference to the late attorney Johnny Cochran.

Plaintiff testified that he filed prison grievances concerning Blandford and others, and wrote to defendant Stubblefield and another prison official, Ircell Grimes, complaining about Blandford's actions as described above, but that Stubblefield found the complaints were unsubstantiated and took

no action. Stubblefield admitted during his testimony that he received plaintiff's grievance letter concerning Blandford and that plaintiff spoke to him personally about Blandford on one occasion. Thus, even without Blandford's testimony, plaintiff was able to present significant evidence concerning Blandford's alleged actions. Plaintiff also testified about being harassed and unfairly targeted for urinalysis testing by defendant Cain.

Plaintiff testified at trial that the 1986 conviction for which he was serving time was related to drug use, that he had used marijuana and heroin prior to the conviction, had problems with drugs throughout his life, and had used marijuana and heroin while in prison on more than one occasion. Plaintiff also testified that he took responsibility for marijuana found in his cell in 1997. The evidence was that plaintiff was target testing twelve times over a four- to five-year period and tested positive several times. Defendants Stubblefield and Cain testified that plaintiff was properly targeted for urinalysis testing under the prison urinalysis policy because of his history of prior drug use and his positive drug test results, although the jury heard evidence that the defendants did not keep any records indicating why plaintiff was targeted, as prison policy required. The jury also heard that defendant Cain was removed from his position as prison urinalysis officer because of inmate complaints that he had improperly targeted them for urinalysis testing after they called him names. Nonetheless, the jury returned its verdict in favor of the defendants and against plaintiff.

Based on the foregoing, the Court cannot find that a miscarriage of justice occurred as a result of permitting the trial to go forward without Blandford's testimony. The jury returned its verdict in favor of defendant Stubblefield although it heard plaintiff's testimony concerning Blandford's and Cain's actions which were attributable to Stubblefield, and heard that the defendants failed to follow prison policy by failing to document why plaintiff was selected for target testing. The jury also

returned its verdict in favor of Cain although it heard plaintiff's testimony that Cain had harassed and targeted him for urinalysis testing, and had been removed from the urinalysis officer position for harassing inmates. Cain testified at trial, and the jury was able to observe his demeanor as well as that of plaintiff and defendant Stubblefield. Plaintiff has not indicated what he would have asked Blandford at deposition, what he expected Blandford's testimony to be, or how Blandford's testimony might have changed the outcome of the case.

There is no basis from which the Court can conclude that having Blandford's testimony at trial, or having Blandford as a defendant at trial, would have given plaintiff a reasonable chance of obtaining a different outcome from the jury. It appears to the Court that the jury credited defendants' testimony that it was proper to target test plaintiff based on his admitted history of drug use both in and out of prison, despite a lack of documentation indicating why plaintiff was targeted.

For these reasons, plaintiff's motion for new trial should therefore be denied in all respects.

**B. Motion for Attorney's Fees and Costs**.

Plaintiff moved for an award of attorney's fees and costs on the expectation that he would be granted injunctive relief against the defendants and would therefore be a prevailing party. Because the Court denied plaintiff's motion for injunctive relief and plaintiff is not otherwise a prevailing party, this motion should be denied.

Plaintiff also requests an award of attorney's fees as a sanction for defendants' failure to properly disclose to plaintiff and to the Court when Michael Blandford returned from overseas military service. See Pl.'s Mot. for Atty. Fees and Costs at 4-5. The Court interprets plaintiff's motion as one under Rule 37, Fed. R. Civ. P.

Rule 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence . . . any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Rule 37(c)(1), Fed. R. Civ. P.

A party's failure to comply with a discovery order must be attributable to some fault of that party before any sanctions can be imposed, Societe Internationale v. Rogers, 357 U.S. 197, 212 (1958), but gross or even simple negligence on the party of a noncomplying party or its attorney can be a sufficient basis for the imposition of sanctions under Rule 37. See, e.g., Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp., 602 F.3d 1062, 1067 (2d Cir. 1979).

Rule 37 specifies a sanction of payment for attorney's fees <u>caused</u> by the failure to supplement. Rule 37(c)(1); Fed. R. Civ. P.; see, e.g., Lawrence v. Bowersox, 297 F.3d 727, 734 (8th Cir. 2002) (affirming award of sanctions of attorney's fees and costs to prisoner plaintiffs based on defendant prison officials' failure to comply with an order to turn over a videotape of a pepper-spraying incident; sanction were " based . . . on a verified statement from the inmates' counsel that provided information concerning the time and expenses undertaken by them while the prison officials were playing 'hide the ball.'").

The Court finds that such a sanction is not appropriate under the facts of this case, even though the defendants and their counsel negligently failed to supplement their responses to plaintiff's discovery requests concerning Blandford. Plaintiff has not identified any attorney time or expenses incurred because of the defendants' failure to supplement. Rather, plaintiff is requesting an award

for his entire attorney's fees incurred--an amount in excess of $180,000.00--as a general form of sanction. See Pl.'s Mem. Supp. Mot. Atty's. Fees and Costs at 5-6. The Court finds that such an award would be unreasonable, and plaintiff's motion for attorney's fees as a discovery sanction should therefore be denied.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff's alternative motion for new trial and motion for attorney's fees and costs should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's alternative motion for a new trial is **DENIED**. [Doc. 191]

**IT IS FURTHER ORDERED** that plaintiff's motion for attorney fees is **DENIED**. [Doc. 194]

**IT IS FURTHER ORDERED** that plaintiff's appointed counsel shall file any Request for Compensation for Services and Reimbursement of Out-of-Pocket expenses from the Non-Appropriated Fund within sixty (60) days of the date of this Memorandum and Order.

                                                  /s/ Charles A. Shaw
                                                  **CHARLES A. SHAW**
                                                  **UNITED STATES DISTRICT JUDGE**

Dated this  8th  day of March, 2006.